**IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

**TAMEKA TILLMAN,**
**12803 Foxhound Court**
**Upper Marlboro, MD 20772**

***Plaintiff,***

**v.**

**JEFFERSON B. SESSIONS, II,**
**ATTONREY GENERAL,**
**U.S. DEPARTMENT OF JUSTICE**
**950 Pennsylvania Ave., N.W.**
**Washington, D.C. 20530**

***Defendant.***

**Civ. Action No. 1:17-cv-475**

**Jury Trial Demand**

## COMPLAINT

Comes now the Plaintiff Tameka Tillman (hereafter "Plaintiff" or "Ms. Tillman"), by and through counsel, and files this Complaint against Defendant Jefferson B. Sessions, II, the Attorney General of the United States and the head of the U.S. Department of Justice, and for her Complaint states as follows.

This action seeks declaratory, injunctive and equitable relief, and compensatory and punitive damages from Defendant for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

## Jurisdiction and Venue

1. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331.

2. Plaintiff exhausted all administrative remedies.

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendant may be found in this judicial district.

**Parties**

4. Tameka Tillman is a citizen of the United States, a resident of Maryland, and a former employee of the Department of Justice (hereinafter "Defendant" or the "Agency").

5. Defendant Jefferson B. Sessions, II is the Attorney General of the United States and the head of the Department of Justice. The Department of Justice is an agency of the United States government and an "employer" within the meaning of the statutes under which Plaintiff brings her claims. Defendant Sessions is being sued in his official capacity.

**Facts**

6. Plaintiff Tameka Tillman, an African American female, worked for the Administrative Management Section of the Department of Justice, Civil Rights Division (CRD) as a Budget Analyst from June 2008 through her termination from employment on September 11, 2013. At the time of her termination, Ms. Tillman had worked for the federal government for approximately fifteen years.

7. During the times relevant to this Complaint, Ms. Tillman's first-line supervisor was Moeen Chowdhury (Asian male), the then-Acting Budget Director for the CRD, and her second-line supervisor was Jody Harry (Caucasian female), the Comptroller for the CRD. Ms. Tillman had previously filed a formal complaint of discrimination with the Agency's Equal Employment Opportunity ("EEO") Office on May 23, 2012 against several of her supervisors, including Ms. Harry and Mr. Chowdhury.

8. Ms. Tillman's duties as a budget analyst included completing control number fiscal reports on a cyclical basis. In 2012, Ms. Harry removed some of Ms. Tillman's duties and assigned the 2014 Fiscal Year control number report to Laverne Thomas[LR1], a contractor for the Agency.

9. Ms. Thomas left the Agency in late 2012, and Ms. Harry re-assigned the 2014 Fiscal Year control number report project to Ms. Tillman in or around December 2012. The template for the control number report was drastically changed for the 2014 Fiscal Year. While Mr. Chowdhury and Ms. Thomas had received individual training on the control number report assignment based on the new template, Ms. Tillman did not receive the same individual training based on the new template.

10. Due to circumstances beyond her control, Ms. Tillman was unable to complete the control number report in December 2012 or January 2013. To complete the report, Ms. Tillman had to first obtain pass back information from the Office of Management and Budget (OMB). While OMB generally provided the pass back information in November of each year, OMB did not provide the pass back information for the 2014 Fiscal Year until February 2013. On or around January 15, 2013, Ms. Tillman informed Mr. Chowdhury that she had not yet received the pass back information from OMB, which was required to complete the 2014 Fiscal Year control number report project.

11. In or around January 2013, Ms. Tillman was assigned to complete a Congressional report. She prioritized the completion of the Congressional report over that of the control number report because the Congressional report had an imminent deadline and she had not yet received the information necessary to complete the 2014 Fiscal Year control number report from the OMB. Further, while the Congressional report had a definite and urgent deadline, the control number

report was an ongoing project that did not have a specific deadline. Mr. Chowdhury admitted to Ms. Tillman that the 2014 Fiscal Year control number report assignment was an ongoing project.

12. In January and February 2013, Ms. Tillman had to take multiple days of sick and annual leave, as well as leave pursuant to the Family Medical Leave Act ("FMLA"), to care for her child and to recover from her own illness. She properly requested and was approved to take leave, and she provided Mr. Chowdhury with proper documentation to support her leave requests on a weekly basis.

13. On or around February 21, 2013, Ms. Harry issued Ms. Tillman a letter of reprimand dated January 31, 2013 because the 2014 Fiscal Year control number report was not completed. Ms. Tillman was surprised by the reprimand because she could not have completed the control number report at an earlier time, as she had just received the OMB pass back information she needed to complete the report and she had previously notified her supervisor that she needed the pass back information to complete the report.

14. On February 26, 2013, Ms. Tillman gave her supervisors documentation to support her request for FMLA leave the week of February 11, 2013 to care for her sick child, and she left Mr. Chowdhury a detailed message with information regarding her leave request.

15. On February 28, 2013, Mr. Chowdhury and Ms. Harry issued Ms. Tillman a letter, placing her on leave restriction and revoking her previously approved alternative work schedule (AWS). Before receiving this letter, Ms. Tillman had never been placed on leave restriction in her fifteen years of government service, and no other person in her section had ever been placed on leave restriction. The February 28, 2013 letter asserted that Ms. Tillman's leave was being restricted due to her inconsistent attendance, but Ms. Tillman's attendance record confirms that all her leave from 2012 through February 2013 was authorized. Mr. Chowdhury had personally

approved her requests for leave and never previously advised Ms. Tillman that any of her leave was unauthorized.

16. Between February 10, 2013 and March 9, 2013, Ms. Tillman submitted leave requests in order to care for her sick child and provided medical documentation in support of her requests. While Ms. Tillman was on approved leave, Mr. Chowdhury denied an upcoming request for leave and later charged her as Absent Without Leave (AWOL). Mr. Chowdhury claimed that he denied Ms. Tillman's leave because Ms. Tillman failed to name her child on the leave documentation. However, Ms. Tillman had previously identified her sick child to Mr. Chowdhury in a detailed phone message regarding her leave. No one from the Agency informed Ms. Tillman that her routine leave request was denied and that she was being charged AWOL. Ms. Tillman only discovered the AWOL charge because she was not paid for the time. She promptly petitioned the Assistant Attorney General of the CRD to overturn the AWOL charge, and the charge was overturned. To Ms. Tillman's knowledge, Mr. Chowdhury had never denied another employee's leave request due to a technicality, and no other person in her division had previously been placed on AWOL status.

17. On March 11, 2013, Ms. Harry instituted a requirement that Ms. Tillman email her Supervisor anytime she left her desk for more than ten minutes and required her (Ms. Tillman) to report her arrival and departure times every day.

18. Ms. Tillman contacted the EEO office and reported that she was being subjected to discrimination, retaliation, and a hostile work environment by Ms. Harry and Mr. Chowdhury on March 11, 2013.

19. Following her March 11, 2013 EEO complaint, Ms. Tillman met with an employment discrimination attorney during her lunch hour on March 21, 2013. Ms. Tillman did

not request leave to attend the meeting with her attorney because she was unaware that she could take administrative leave to see her attorney and she believed she had sufficient time to meet with her attorney during her lunch hour. The meeting lasted longer than Ms. Tillman expected, and both Ms. Harry and Mr. Chowdhury were looking for Ms. Tillman upon her return. Ms. Tillman was charged as AWOL and issued a four-day suspension as a result of her visit to her attorney.

20. On or around April 2, 2013, Ms. Harry and Mr. Chowdhury placed Ms. Tillman on a sixty day Performance Improvement Plan (PIP). The performance deficiencies noted in the PIP were false and/or unreasonable. For example, the PIP stated Ms. Tillman's performance was unacceptable because she demonstrated a pattern of irregular attendance and was unable to meet due dates on assignments, even though Ms. Tillman's supervisors knew that she had had to take FMLA leave to care for her child, which impacted her ability to meet deadlines. Ms. Tillman had never been previously placed on a PIP, and to her knowledge, no other person in the office had been placed on a PIP. She believed that Ms. Harry and Mr. Chowdhury were targeting her based on her race and in retaliation for her complaints of discrimination.

21. During the sixty-day PIP period, Ms. Tillman had to take doctor-approved FMLA leave, and as a result, she was unable to properly complete two assignments identified in the PIP.

22. On April 10, 2013, Ms. Harry and Mr. Chowdhury placed Ms. Tillman on a five-day suspension for allegedly using a disrespectful tone when answering Mr. Chowdhury's questions about her leave and the status of an assignment. However, Ms. Tillman expressly denies having used a disrespectful tone, and the only witnesses to this conversation were Ms. Harry and Mr. Chowdhury.

23. On May 29, 2013, Ms. Tillman filed a formal EEO complaint against Ms. Harry and Mr. Chowdhury.

24. Two days after Ms. Tillman filed her EEO complaint, Ms. Harry issued her a notice of proposed removal. The notice recommended her for termination because she allegedly failed to improve her performance during the PIP to a "Minimally Satisfactory" level and accused her of failing to timely complete assignments in her PIP, even though Ms. Harry knew that Ms. Tillman had had to take FMLA leave, which impacted her ability to complete these assignments.

25. Ms. Harry denied Ms. Tillman's in-grade salary increase on June 4, 2013.

26. On September 9, 2013, the Executive Officer, Milton McConkey, issued Ms. Tillman a Decision on Proposed Removal, terminating her from employment effective September 11, 2013.

## COUNT I

**Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.***
***Disparate Treatment Based on Race***

27. Plaintiff Tillman incorporates by reference paragraphs 1 through 26 as if fully stated herein.

28. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, term, conditions, or privileges of employment, because of such individual's color, religion, sex, age, national origin, or to limit, segregate, or classify her employees or applicants for employment opportunities or otherwise adversely affect her status as an employee, because of the individual's race, color, religion, sex, age, or national origin.

29. At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

30. At all pertinent times, Ms. Tillman was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

31. In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq*., Defendant, through its agents, knowingly and intentionally subjected Ms. Tillman to disparate treatment based on her race when Defendant removed her duties, failed to train her on her revised, reassigned duties, targeted her for reprimand and suspensions, denied her AWS and restricted her leave, placed extra scrutiny on her leave requests, charged her as AWOL without notice, imposed requirements that she notify her supervisors anytime she left her desk for more than ten minutes and report her daily arrival and departure times, placed her on a PIP, denied her an in-grade raise, proposed her for termination for failing to timely complete assignments in the PIP, even though her supervisors knew that she could not complete the assignments because she had to take FMLA leave, and terminated her from employment. To Plaintiff's knowledge, employees outside her protected class were not subjected to the same treatment.

32. Defendant had no legitimate business reason for any of such acts.

**COUNT II**

**Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.***
**Retaliation**

33. Plaintiff Tillman incorporates by reference paragraphs 1 through 32 as if fully stated herein.

34. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to retaliate against any individual with respect to her compensation, term, conditions, or privileges of employment in response to the individual's protected activity.

35. At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

36. At all pertinent times, Ms. Tillman was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

37. In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq*., Defendant, through its agents, knowingly and intentionally retaliated against Ms. Tillman for engaging in protected activities, including when she filed EEO complaints against her supervisors on May 23, 2012 and March 11, 2013. Specifically, Defendant, through its agents, retaliated against Ms. Tillman when Defendant removed her duties, failed to train her on her revised, reassigned duties, targeted her for reprimand and suspensions, denied her AWS and restricted her leave, placed extra scrutiny on her leave requests, charged her as AWOL without notice, imposed requirements that she notify her supervisors anytime she left her desk for more than ten minutes and report her daily arrival and departure times, placed her on a PIP, denied her an in-grade raise, proposed her for termination for failing to timely complete assignments in the PIP, even though her supervisors knew that she could not complete the assignments because she had to take FMLA leave, and terminated her from employment.

38. Defendant had no legitimate business reason for any of such acts.

## COUNT III

### Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Hostile Work Environment

39. Plaintiff Tillman incorporates by reference paragraphs 1 through 38 as if fully stated herein.

40. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to her compensation, term, conditions, or privileges of employment, because of such individual's color, religion, sex, age, national origin or because such individual has complained of conduct prohibited by this act, or to limit, segregate, or classify her employees or applicants for employment opportunities or otherwise adversely affect her status as an employee, because of the individual's race, color, religion, sex, age, or national origin or because such individual has complained of conduct prohibited by this act.

41. A hostile work environment is a form of prohibited employment discrimination where the employee is subjected to a work environment permeated with ridicule and humiliation and/or subjected to adverse action that substantially alters the work environment because of that employee's race, national origin, and/or age, and/or because the employee complained of discriminatory treatment.

42. At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

43. At all pertinent times, Ms. Tillman was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

44. Defendant, through its agents, subjected Ms. Tillman to a hostile work environment based on her race and in retaliation for her complaints of discrimination when Defendant removed her duties, failed to train her on her revised, reassigned duties, micromanaged her work, targeted her for reprimand and suspensions, denied her AWS and restricted her leave, placed extra scrutiny on her leave requests, charged her as AWOL without notice, imposed requirements that she notify her supervisors anytime she left her desk for more than ten minutes and report her daily arrival and departure times, placed her on a PIP, denied her an in-grade raise, proposed her for termination for failing to timely complete assignments in the PIP, even though her supervisors knew that she could

not complete the assignments because she had to take FMLA leave, and terminated her from employment. To Plaintiff's knowledge, employees outside her protected class were not subjected to the same treatment.

45. Defendant had no legitimate business reason for any of such acts.

**PRAYER FOR RELIEF**

46. WHEREFORE, Plaintiff Tillman prays as follows:

A. That this Court issue a declaratory judgment that Defendant violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, and declare Plaintiff eligible to receive equitable and other relief;

B. Issue a permanent injunction prohibiting Defendant from engaging in any discriminatory and retaliatory actions;

C. Enter judgment in favor of Plaintiff against Defendant for all equitable monetary damages available under the law, including but not limited to back pay and front pay in amounts to be determined at trial;

D. Order Defendant to pay compensatory and punitive damages in amounts to be determined at trial;

E. Order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees, and costs; and

F. Order any other relief this Court deems appropriate.

Respectfully submitted,

______________________________

David A. Branch #438764

Law Office of David A. Branch and
Associates, PLLC
1828 L Street, NW, Suite 820
Washington, D.C. 20036
(202) 785-2805

**JURY DEMAND**

Plaintiff demands a jury trial on all counts against Defendant.